VIRGINIA,
1815.

Jackson
v.
Row.

# DISTRICT COURT U. S.

## MAINE, MARCH, 1824.

*United States*
v. } HABEAS CORPUS.
*Isaac Turner.*

Present—Hon. *Ashur Ware.*

Isaac Turner, a man of colour, was brought before the Hon. *Ashur Ware*, judge of the district court of the United States in Maine, on the 8th of March last by writ of habeas corpus. It appeared on examination, that Turner had shipped on board the brig Effort, of Salem, Capt. Miller, which was then lying at the wharf in Portland; that Turner had absented himself from the vessel two nights successively without leave, and the second time was brought on board, late in the following forenoon, by the assistance of a civil officer.

It appeared by the declaration of the owner, that the captain, by his direction, then caused a chain to be fastened to the cook's leg by a blacksmith, with an iron rivet above the ancle; and that the chain, which was of sufficient length to enable him to traverse the deck, was secured by a lock to an iron ring, bolted into the deck. It appeared that during the day time, he was kept in this situation confined to the caboose house or galley, at his work as cook. At night his chain was unlocked, and he was secured in a place particularly fitted up for him between the decks, so as to enable him to get in and out of his berth, but at the same time so as to prevent his escape. He was kept in this situation alternately day and night, for the space of from five to seven or eight days, by order of the owner, considering it, as he alleged, more for the benefit of the cook himself, than to cause

*To claim a seaman, who had absented himself from the ship for two nights, by an iron chain fastened to the deck for the purpose of preventing his escape is not contrary to the general spirit of the maritime law, nor to the act of congress July 20, 1790.*

MAINE,
1824.

United States
v.
Turner.

him to be committed to prison under the statute at the expense of the cook himself, which he several times solicited.

There was no proof, however, of any ill treatment on the part of the owners or officers of the vessel, beyond what might necessarily arise, or be inferred from these circumstances, except from the declaration of the cook himself, that he was quite unwell during a part of the time. He was permitted to have no communication with any person on shore, from an apprehension that they might assist him in escaping. It was acknowledged by the cook that he finally contrived to file off the rivet around his leg, and make his escape from the vessel, as it appeared, during supper time, although he complained that his leg was so much galled as to prevent his escaping to any considerable distance. He was re-taken within a day or two after, and committed to prison; and these circumstances appearing as thus stated on the examination upon the habeas corpus, it was moved on his behalf that he should be entirely discharged.

It was urged on behalf of the prisoner, that this mode of restraint, securing seamen like a criminal on the deck of a vessel, with chains and fetters, by the side of a public wharf, was such a violation of the personal rights of the seamen, such a public scandal, and so revolting to the spirit of our laws, as amounted to a total dissolution of the maritime contract, and entitled the seaman to an absolute discharge.

By the court.—The contract of hire for marine service stands, on reasons in many respects, peculiar to itself, and bearing a strong analogy to contracts for military service. A seaman who abandons a vessel is not considered merely as violating a civil contract, but as, in some degree, a criminal, and liable to corporeal punishment. There was nothing in the mode of punishment adopted on this occasion contrary to the general spirit and principles of the maritime law. There was, under all circumstances, no excess of punishment in this case; and lastly, the statute of the United States, (July 20th, 1790,) providing for the apprehension of deserting seamen by warrant, and their confinement in prison, is only auxiliary to the marine law, and does not supersede it even in the ports of the United States. The prisoner was therefore remanded into custody.